**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff/Respondent,

No. 1:13-CR-02520-WJ-KRS

v.

JOSE FERNANDO VALLECILLO-RODRIGUEZ,

Defendant/Movant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Federal inmate Jose Fernando Vallecillo-Rodriguez seeks review of his sixty-month sentence under 28 U.S.C. § 2255 arising from his guilty plea to unlawful reentry. Vallecillo-Rodriguez argues that the Court must set aside his sentence because it was calculated, in part, using a 1995 conviction for second-degree murder in state court that was vacated in January 2017. Without this conviction, Vallecillo-Rodriguez maintains, the appropriate range of his federal sentence is only six to twelve months, which he has already served. Instead of filing a response, the Government moved to enforce the broad appeals-waiver clause of Vallecillo-Rodriguez's written plea agreement, which purports to bar collateral challenges. Vallecillo-Rodriguez insists the waiver is unenforceable because it was the product of ineffective assistance of counsel. Pursuant to an order of reference from Chief United States District Judge William Johnson, *see* 28 U.S.C. § 636(b), the Court has considered the parties' submissions and reviewed the record. Having done so, the Court recommends that Vallecillo-Rodriguez's motion **GRANTED** and he be resentenced.

## I. BACKGROUND

On May 20, 2013, Vallecillo-Rodriguez, a Mexican national previously removed from the United States, was arrested by federal immigration agents in Albuquerque, New Mexico. (Doc. 51). Although Vallecillo-Rodriguez had been lawful permanent resident, he was deported after serving a ten-year sentence for a second-degree murder conviction from the Second Judicial District Court for Bernalillo County, New Mexico. (Doc. 71-1). Vallecillo-Rodriguez had previously attempted to return to the United States on different occasions, and at the time of his arrest, was under a removal order from November 2011. (Docs. 51; 71-1). On July 25, 2013, a federal grand jury returned a single-count indictment charging Vallecillo-Rodriguez with unlawful reentry into the United States after having been deported, in violation of 18 U.S.C. § 1326. (Doc. 14).

Following his indictment, Vallecillo-Rodriguez began exploring plea negotiations though his court-appointed attorney. (Docs. 7; 35). On May 14, 2014, Vallecillo-Rodriguez asked the Court to authorize the United States Probation Office to prepare a "Pre-Plea Presentence Report (Form 13)" to assist in that regard. (Doc. 35). The Court granted the motion. (Doc. 37). Toward the end of 2014, Vallecillo-Rodriguez also engaged an attorney to renew previous challenges to his second-degree murder conviction in state court. (Doc. 71-1). Vallecillo-Rodriguez asserted trial counsel failed to adequately explain to him that his guilty plea to second-degree murder would cause him to be deported to Mexico after completing his sentence. (*Id.*).

On February 26, 2015, Vallecillo-Rodriguez pleaded guilty to the single count in the federal indictment. (Doc. 51). In a written agreement, Vallecillo-Rodriguez admitted he was a Mexican national, had knowingly reentered the United States after being deported, and had not

obtained the express consent of the Secretary of Homeland Security to do so. (*Id.*). In exchange for the plea and Vallecillo-Rodriguez's "waiver of appeal rights,"[1] the Government agreed to a specific sentence of 60 months incarceration pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Magistrate Judge Lorenzo Garcia accepted the plea on the same day. (Doc. 42) During the colloquy, Judge Garcia explained:

> Judge Garcia: . . . Judge Johnson will determine whether he can accept your plea agreement only after he considers a presentence report and the sentencing guidelines. Therefore, Mr. Vallecillo, even though I am prepared to accept your plea of guilty today, Judge Johnson retains authority to accept the plea agreement as distinct from the plea of guilty. Do you understand he has that authority?
>
> Vallecillo-Rodriguez: Yes.

Chief Judge Johnson set the matter for sentencing. Vallecillo-Rodriguez moved to continue the initial sentencing hearing—and on two other occasions after the Court granted the first request to delay the proceedings. (Docs. 54; 57; 59). Although continuances are routine and normally would merit little discussion, they are of importance here because of the reason Vallecillo-Rodriguez sought them. Even *after* agreeing to a specific term of imprisonment and waiving collateral challenges, Vallecillo-Rodriguez wanted sentencing put off because he "filed a motion in the state court to vacate his [second-degree murder] conviction" and "[i]f [his] prior

---

[1] The waiver reads as follows in its entirety:

> The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's convictions(s) and any sentence, including any fine, imposed in conformity with this Fed. R. Crim. P. 11(c)(1)(C) plea agreement. In addition, the Defendant agrees to waive any collateral attack to the Defendant's convictions(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance. The appellate waiver in this plea agreement does not bar the defendant from seeking a sentence reduction pursuant to 18 U.S.C. § 3582 should the Sentencing Commission so authorize. (Doc. 51, p. 6).

conviction is overturned, it may have implication with regard to sentencing and supervised release hearings." (Docs. 54; 57; 59). Each time, the Government agreed to the relief requested. (*See id.*).

On July 26, 2015, Chief Judge Johnson denied a third motion to continue. (Doc. 62). In an amended order, the Court acknowledged that "if Defendant's 1995 conviction were vacated prior to sentencing . . . Defendant's guideline imprisonment range would be reduced from [a range of] 70 to 87 months . . . to a range of 37 to 46 months[.]" (*Id.*). The Court, however, was unwilling to delay sentencing any further because "the mere possibility that Defendant might succeed in having his twenty-year-old murder conviction vacated does not justify further delay in this action." (*Id.*). The Court also explained that Vallecillo-Rodriguez was adequately protected should he obtain a favorable ruling:

> [I]f Defendant ultimately succeeds in his habeas action after this Court sentences him, he is not without remedies. "If a defendant successfully attacks state sentences, he may then apply for reopening of any federal sentence enhanced by the state sentences" through a federal habeas action under 28 U.S.C. § 2255. The availability of this safeguard further weighs in favor of moving forward with Defendant's sentencing hearing as scheduled.

(*Id.*) (Citation omitted).

On August 4, 2015, the Court sentenced Vallecillo-Rodriguez to the 60-month agreed upon term. (Docs. 61; 63). As for the pending state court proceedings, Chief Judge Johnson explained:

> THE COURT: All right. For purposes of -- as we sit here today, before we get to the 11(c)(1)(C) plea agreement, I'll find Probation correctly calculated the Defendant's Offense Level at 21, his criminal History Category is 5, and again, before you get to anything in the plea agreement, the guideline range is 70 to 87 months. Now, I agree with counsel that in the order denying the Motions to Continue, that I was wrong. I did this while I was in Las Cruces last week at a trial, and I

didn't catch this when I reviewed the order. But if the Defendant is successful in getting the State conviction set aside -- that is, the second degree murder conviction -- then his Offense Level would be 17, and the Criminal History Category 4. Do you agree with that?

MR. WILSON: Yes, Your Honor.

THE COURT: And that's a guideline range of 36 to 47 months. Now, I'll note that correction for the record. My decision to continue this -- or not to continue this, rather, remains the same. If the defendant is successful in his habeas proceeding in State Court, then he does have a remedy in that he can file a 2255 petition in this case. It would come to me I feel I would be obligated to accord him some relief, if he was successful in setting aside the State conviction. I'll also state that I'm not going to enter any of the Judgments until after the evidentiary hearing in State Court proceedings.

(Doc. 74, pp. 3-4). In the clerk's minutes memorializing the sentencing hearing, a notation reads: Vallecillo-Rodriguez "[w]aived appeal rights per Plea Agreement" but a comment later in the filing states that "if Defendant is successful at state level, Defendant has post sentencing options to correct his sentence." (Doc. 61).

Ultimately, Vallecillo-Rodriguez was successful in his state-court challenge. In a written order dated January 11, 2017, the Second Judicial District Court granted Vallecillo-Rodriguez's amended motion to vacate his conviction. (Doc. 69-1). The court concluded that Vallecillo-Rodriguez's "no-contest plea [to second-degree murder] "was not knowing or voluntary because it resulted from ineffective assistance of counsel." (*Id.*, p. 11). The ineffective assistance was Vallecillo-Rodriguez's then lawyer's failure to advise him of the immigration consequences of the non-contest plea. (*Id.*). The state court vacated the conviction and indicated it would set the matter for a new trial. (*Id.*).[2] This motion under Section 2255 followed.

[2] It appears Vallecillo-Rodriguez subsequently pleaded guilty in the state-court proceedings to a lesser crime and was sentenced to time served. The parties do not provide this information to the Court, and it is unclear how this conviction will change the sentencing range. Ultimately, the parties may argue the effect, if any, at resentencing.

## II. STANDARD OF REVIEW

Section 2255 authorizes a federal prisoner to move the court that sentenced him to "vacate, set aside or correct the sentence" on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). In reviewing a motion under Section 2255, the Court presumes that the proceedings leading to defendant's conviction were correct. *See Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989). To prevail, defendant must show a defect in the proceedings that resulted in a "complete miscarriage of justice." *Davis v. United State*s, 417 U.S. 333, 346 (1974).

## III. ANALYSIS

The primary issue before the Court is whether the waiver provision of the plea agreement Vallecillo-Rodriguez signed bars the relief he requests. If this clause does not control, Supreme Court precedent mandates resentencing. *See Johnson v. United States*, 544 U.S. 295, 303 (2005) (explaining that "a defendant given a sentence enhancement for a prior conviction is entitled to a reduction if the earlier sentence is vacated"). On the other hand, where a defendant knowingly and voluntarily enters into waiver, a subsequent motion under Section 2255 falls within the scope of the waiver, and enforcing the waiver will not result in a miscarriage of justice, a defendant has no entitlement to resentencing. *See United States v. Pam*, 867 F.3d 1191, 1200-1201 (10th Cir. 2017).

### A. **Whether the Totality of the Circumstances Render the Waiver of Collateral Review in the Plea Agreement Unenforceable.**

At sentencing, Chief Judge Johnson explained that "[i]f the defendant is successful in his habeas proceeding in State Court, then he does have a remedy in that he can file a 2255 petition in this case." (Doc. 74, p. 4). More significantly, the sentencing court explained, not only would Vallecillo-Rodriguez have a remedy, he would be entitled to resentencing: The collateral challenge "would come to me[;] I feel I would be obligated to accord [Vallecillo-Rodriguez] some relief, if he was successful in setting aside the State conviction. " (*Id.*). In the Court's view, Chief Judge Johnson unequivocally answered the question presented, notwithstanding the existence of a facially valid waiver of appellate rights in the plea agreement.

The Court is cognizant of case law holding that a trial court's statements at sentencing typically do not overcome an otherwise valid waiver. *See United States v. Hahn*, 359 F.3d 1315, 1324-25 (10th Cir. 2004) (en banc); *United States v. Arevalo-Jimenez*, 372 F.3d 1204, 1205-1206 (10th Cir. 2004). In *Arevalo-Jimenez*, for example, the defendant entered into a plea agreement with an appeal waiver. Following the plea, the defendant objected to the presentence report because it was unclear whether past convictions were used to calculate his range under the guidelines. In overruling the objection at sentencing, the district court informed the defendant that he could appeal "the calculation of his criminal history." *Id.* at 1206 (internal alterations omitted).

On appeal, the court rejected the defendant's argument that the waiver had been modified to permit an appeal. "[A]bsent exceptional circumstances," the Tenth Circuit held, "the district court lacks authority to modify a plea agreement at sentencing." *Id.* According to the court of appeals, no such circumstances were present because the defendant expressly confirmed to the magistrate judge who took the plea months earlier that he understood the waiver. Further, the

agreement itself prohibited modifications except in writing. *Id.* at 1206-1207. Thus, the court enforced "the terms of the written waiver and conclude[d] that this appeal f[ell] within the scope of that waiver." *Id*. at 1207.

The Tenth Circuit has not defined "exceptional circumstances." Even those cases that have allowed a defendant to avoid a facially valid waiver have focused on the timing of the district court's statements, not what might overcome the general prohibition on modification at sentencing. *See, e.g., United States v. Wilken*, 498 F.3d 1160, 1167 (10th Cir. 2007). In *Wilken*, the court of appeals analyzed "whether the sentencing court's mischaracterization of an appellate waiver during a plea colloquy, prior to signing of the plea agreement or entry of a guilty plea, can create a material ambiguity as to an otherwise unambiguous waiver in the plea agreement." *Id.* Under that sequence of events, the court held, absent a clarification from the district court, the waiver is unenforceable. *Id.* Notably, the Tenth Circuit did not couch its holding as an exception to the general rule that a district court cannot render ambiguous a plea agreement provision at sentencing only as a scenario that "we have not squarely faced." *Id.*

In other words, while it may be tempting to say that *Wilken* was *the* exceptional circumstance the Tenth Circuit meant, *Arevalo-Jimenez*, the case that established the term of art, concerned itself with "the district court['s] . . . authority to modify a plea agreement *at* sentencing," *not* during the plea colloquy. 231 F.3d at 712 (emphasis added). In a case that postdates *Arevalo-Jimenez*, the Tenth Circuit "acknowledged that [the district court's] instructions [on appellate rights] may have the potential to render appellate waivers invalid when the instructions are inconsistent with the defendant's rights or when the district court's statement has the serious potential to confuse the defendant." *United States v. Smith*, 500 F.3d 1206, 1212
(10th Cir. 2007). Although the "acknowledgement" might be considered dicta, the court nonetheless provided specific guidance to sentencing courts to underscore its importance:

> When a defendant waives certain appellate rights in a plea agreement, the district court need not, and should not, inform him that he retains such rights by, for example, making a blanket statement that the defendant has a right to appeal. Instead, the district court should inform the defendant that he has a right to appeal the sentence only to the extent that the defendant has not waived that right in the plea agreement. Such a statement, in conjunction, of course, with the court's confirmation that the defendant entered into the plea agreement knowingly and voluntarily through a complete Rule 11 colloquy, should ensure both that the defendant understands his rights and that the waiver is enforceable.

*Id.*

Under the totality of the circumstances, Vallecillo-Rodriguez had a reasonable expectation that he would be permitted to challenge his federal sentence if his state-court conviction for second-degree murder was vacated. First, the magistrate judge that accepted the plea informed Vallecillo-Rodriguez that the plea *agreement* would be subject to further scrutiny by Chief Judge Johnson. Second, Vallecillo-Rodriguez moved on three separate occasions to continue sentencing to await the results of collateral proceedings in state court because of the *effect* of vacating the conviction would have on the sentencing range in federal court. Each time, the Government concurred in the relief requested, rather than opposing on the grounds that a continuance would be futile in light of the already agreed upon term and waiver. Third, in denying a third continuance, the Court explained that Vallecillo-Rodriguez's guidelines range would be considerably less if the state court vacated the second-degree murder conviction, but the availability of collateral review under Section 2255 favored proceeding to sentencing immediately.

Finally, Chief Judge Johnson told Vallecillo-Rodriguez at sentencing that if the state court had not acted by the time the Court entered final judgment, which it agreed to delay because an evidentiary hearing had been scheduled in state court, the motion under Section 2255

would come to Chief Judge Johnson and Chief Judge Johnson would "feel obligated" to afford Vallecillo-Rodriguez "some relief" if his conviction had been vacated. Although each of these factors standing alone would not necessarily prevail, together the facts speak to the scenario outlined in *Smith* and favor resentencing Vallecillo-Rodriguez.[3]

**B. Whether the Agreed-Upon Sentence Under Fed. R. Crim P. 11(c)(1)(C) Renders Moot Any Enforceability Issue**

The Government advances two alternative arguments should the Court decide the waiver is unenforceable: (1) based on the factors enumerated in 18 U.S.C. § 3553, an upward variance would be appropriate; and (2) that since Vallecillo-Rodriguez agreed to specific sentence of 60 months, it makes no difference that a state-conviction, which at best affects scoring under the guidelines, not the specific sentence agreed upon, was vacated. The Government is free to make the first point at resentencing, where the Court will have the benefit of a new presentence report that will assist in understanding the factual developments. As to the second contention, the Court disagrees. While the Government is correct that the Tenth Circuit would likely apply the narrowest ground of the Supreme Court's plurality opinion in *Freeman v. United States*, 564 U.S. 522 (2011)—that if a plea agreement is based on a guidelines range as opposed to a *specific sentence* and the range is later changed by the Sentencing Commission, then the defendant should be able to seek a reduction in sentence as a result, under 18 U.S.C. § 3582(c)(2)—in the context of Section 2255 challenges, *Freeman* does not compel the Government's result here. *See United States v. Pam*, 867 F.3d 1191 (10th Cir. 2017) (explaining that *Freeman* is instructive in

[3] Viewing the plea agreement as a contract, the parties and Court have proceeded at all times consistent with Vallecillo-Rodriguez's right to challenge his sentence under Section 2255 if the state court vacated his conviction for second-degree murder. This post-formation conduct of the Court and Vallecillo-Rodriguez combined with the Government's silence suggests that the waiver language in the plea agreement was not intended to preclude Vallecillo-Rodriguez's present Section 2255 motion. The conduct of the Court and Vallecillo-Rodriguez also suggests that the parties may have been operating under a mutual mistake of fact, which the Tenth Circuit has recognized in the context of analyzing plea agreements. *See United States v. Lewis*, 138 F.3d 840, 841 (10th Cir. 1998)

2255 context, but ultimately concluding that an agreed upon sentence was based on an enhancement under the Armed Career Criminal Act and therefore subject to collateral review).

Although the parties did not agree on a range in the Rule 11(c)(1)(C) plea agreement, it is clear that the guidelines drove the plea negotiations and the specific sentence was a compromise based on the guidelines. First, Vallecillo-Rodriguez moved the Court for a *pre-plea* presentence report, one purpose of which is to determine the potential sentence range, for the stated reason of assisting in plea discussions. Second, sentencing was put off because of the effect action in the state court could have on the sentencing range. Third, sixty months falls in the middle of the two originally contemplated ranges. Finally, Chief Judge Johnson devoted a good deal of time at sentencing to discussing how the range would change if the second-degree murder conviction were vacated. Thus, while *Freeman* may well apply under the circumstances, the Court concludes Vallecillo-Rodriguez's agreed upon-sentence was informed by the guidelines and therefore not a bar to the collateral challenge here.

## CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Vallecillo-Rodriguez's motion under Section 2255 (Doc. 67) be **GRANTED** and the Government's motion to dismiss (Doc. 69) be **DENIED**.

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**